All right, Mr. Homsley, whenever you're ready. Thank you, Your Honor. May it please the Court. I'm Troy Homsley of Trautman Pepper Lock on behalf of TitleMax of South Carolina, Inc. With me at council table here is Lauren Miller of our firm. TitleMax of South Carolina, Inc. operates lawfully under the laws of the state of South Carolina within the state of South Carolina. A regulator over 500 miles away in the Commonwealth of Pennsylvania doesn't like my client's business. So the regulator targeted my client by filing a five-page order to show cause that makes no particularized allegations against TitleMax of South Carolina. The department also issued a subpoena in 2024 that foreshadows additional enforcement activity. The department's extraterritorial nationwide regulatory efforts violate the Constitution in four different ways, under the Commerce Clause, the Due Process Clause, the Equal Protection Clause, and the Full Faith and Credit Clause. The district court, however, did not reach those constitutional claims. Instead, the court found issue preclusion and alternatively abstained under the Younger Doctrine. The district court erred because the first and fifth elements necessary to establish issue preclusion are not met here, and because Younger's narrow, exceptional abstention standard did not permit the district court to ignore its virtually unflagging obligation to take jurisdiction. The three primary issues are issue preclusion, Younger, and ripeness. First, whether the district court erred by holding the issue preclusion bars TitleMax of South Carolina's claims, where the controlling facts changed between the earlier decisions. Do you all dispute that there was this multi-state coordinated litigation strategy where you file suit at the same time, same day, in all the different jurisdictions? Are you disputing that there was this coordinated litigation strategy? Your Honor, we do not deny that there were lawsuits filed on the same day and that there were lawsuits in which other corporate affiliates of TitleMax of South Carolina were represented by the same counsel, but that was in direct response to an order to show calls that named eight separate entities nationwide, all over the country. And those entities do business in different states, in different forum, under different laws, and each of those entities had their own claims on their own facts. So they filed their own lawsuits in their own courts where they had venue to do so, Your Honor. But the issues in those cases were the same? The claims were the same. The facts upon which those claims were based were very different. For example, some of those corporate affiliates don't make loans at all. They've never made loans as alleged in those complaints. Some of those corporate affiliates did not exist during the time period covered by the order to show calls. So there are significant factual differences between the corporate affiliates that issue in each of those underlying lawsuits. Continuing on the issue of preclusion issue, Your Honors, the controlling facts change between the earlier decisions and the district court's decisions. In particular, the Northern District of Texas and the Middle District of Pennsylvania did not have before them the decision that was issued by the commission after those decisions were rendered. In the commission's decision, the commission expressly declined to issue any kind of final order that would have adjudicated Title Max of South Carolina, Inc.'s personal jurisdiction constitutional defense in advance of an evidentiary hearing on the merits. What does that mean? It means that Title Max of South Carolina, Inc. was pulled into an administrative tribunal in Harrisburg, Pennsylvania, forced to sit through an evidentiary hearing before any adjudicator had finally adjudicated whether it had personal jurisdiction or could exercise personal jurisdiction over Title Max of South Carolina, Inc. Again, an entity that does business in South Carolina under the laws of South Carolina, six states away from Pennsylvania. As to the second error by the district court when it came to issue of preclusion, the district court held that Title Max of South Carolina, Inc. was in privity or was adequately represented by the prior litigating entities. And that was an error on several fronts. One, the district court applied a less stringent standard than actually applies in the Fourth Circuit to conclude that Title Max of South Carolina was adequately represented in those prior suits. Two, the district court relied on the fact that Title Max of South Carolina had the same counsel as the prior litigating entities to conclude that Title Max of South Carolina was adequately represented in those prior lawsuits. And choice of counsel simply does not privity make. This court has been very clear that it applies a stringent standard to find adequate representation, also known as virtual representation. And that stringent standard requires proof in the record, something in the record, that the district court can rely upon to conclude that Title Max of South Carolina in this situation controlled the prior litigation, that they literally were controlling that prior litigation and directing it. Or two, that Title Max of South Carolina was, I'm sorry, that Title Max of South Carolina was closely affiliated with those other entities. And to be clear, Title Max of South Carolina, Inc., what is in the record is that Title Max of South Carolina, Inc. is a subsidiary. It has no other subsidiaries. There is no world in which a subsidiary can control the litigation of its parent company or its sister subsidiaries. And worse, there is nothing in the record that would allow the district court to draw that conclusion. And, Your Honors, I think this is important because we allow that virtual representation prong of privity to expand, and it will close the courthouse doors to many litigants who have legitimate claims that need to be heard based on the facts applicable to those parties. And before I move off that topic, Your Honors, I do want to direct you to the fact that the Middle District of Pennsylvania declined to apply issue preclusion, even though that argument was made in front of the Middle District of Pennsylvania Judge Wilson as well. Your Honors, at this time, I'd like to move to younger abstention, unless there are any further questions on collateral estoppel. Younger abstention is the exception, not the rule. Under Younger's departure from the general rule, the federal court has a virtually unflagging obligation to take its jurisdiction where it exists. As a result, a multifaceted test must be met. The party invoking Younger must show, on a claim-by-claim basis, that the challenged conduct is a civil enforcement proceeding that is ongoing. And then the party has to show that each of the middle sex factors are met, including that the state proceeding is intended to protect important state interests, that the state proceeding offers an adequate opportunity for the federal plaintiff's constitutional claims to be adjudicated, and that the proceeding has been initiated by proper service and is therefore ongoing. Starting out with the first issue, whether there is a civil enforcement proceeding ongoing as to each of Title Max of South Carolina's claims. There is not as to several of those claims. One, Title Max of South Carolina, Inc., challenges a subpoena that was issued in 2024. Two, Title Max of South Carolina, Inc., challenges any future regulatory efforts that the commission may choose to take in the future. Neither of those actions are currently ongoing. In fact, the subpoena is not an enforcement action at all. And several courts, including the First, Third, and Fifth Circuit, have reached the conclusion that Younger simply does not apply to a subpoena. As to future regulatory activities, there's also no question that Younger cannot apply because there is no pending regulatory activity when it comes to the time period 2017 to the present. Would the solution there be to, I know you talk about this in your rightness section, to correct the judgment so that those two dismissals are without prejudice? We've addressed this complication of potentially assume that the order show cause was abstention was proper on that. When you have a claim on which abstention is proper and one on which it isn't proper, we've suggested maybe the solution is to replead so that only the claims that are properly in front of the court could proceed. Yes, Your Honor. If the court is inclined to correct any application of Younger to the 2024 subpoena in future regulatory efforts, I actually believe the proper course would be to remand so that Title IX South Carolina can continue to litigate those claims. You know, I know there is a rightness argument, which I'm happy to discuss. You probably need to do that at some point. I don't want to get you off track. Yes. So the primary response that we've heard on the future regulatory efforts in the 2024 subpoena is that those challenges aren't yet ripe. Your Honors, respectfully, they're as ripe as they can be. We know for a fact that the department has in the past enforced a subpoena against Title IX of South Carolina, Inc. And we know that that subpoena led to an enforcement action. There is no question that the moment there is no longer federal oversight over its conduct, that the department is going to go to court and seek to enforce that 2024 subpoena. In SBA lists, the Supreme Court recognized that prior conduct by a regulator can be evidence of imminent threat of enforcement. Well, the rationale in these cases about non-self-executing subpoenas seems to be not that the court has no reason to think there's a threat of prosecution, but rather that a subpoena is an investigatory device, and the government may not find anything to prosecute, right, or to bring an enforcement action about, and that when a court order is then sought to enforce the subpoena, then once that party is in court, they can bring all of their objections then when they are ripe, when a court's enforcing that. Now, if you're challenging the subpoena itself, right, the subpoena itself violates the First Amendment, something like that, that's maybe a different question. But here the challenge seems to be eventually if the state enforces its laws against us, that's going to violate the Constitution. And that is what seems to not be ripe, or what the court thought was not ripe in this non-self-executing subpoena context. Yes, Your Honor, and the Supreme Court is actively considering a case that touches on this exact issue, First Amendment's choice, which is currently pending. I took a look at Nick recently, which recognizes that if you cannot bring a pre-enforcement challenge to a state investigative subpoena, you're left in a catch-22. And this is always the problem with Younger, right? You're left in a catch-22. If you can't go to court when you get that subpoena but before it's been enforced, then you have to wait until that enforcement proceeding is brought in state court. And the moment it's brought in state court, you're liable to get a judgment quicker in state court than you would in federal court. And that state court judgment is going to have preclusive effect in federal court, basically stamping out the federal court's ability to adjudicate an imminent constitutional injury. And that is really the purpose of Section 1983, is to provide an immediate federal forum for a threatened constitutional violation. And that's what we have when we're facing a subpoena that hasn't been enforced yet, admittedly, but could be any day, will be any day. Did Title Max of South Carolina change its conduct somewhat between the 2017 subpoena and the 2024 subpoena? Yes. Some of its business practices were changed after 2017. And actually, Your Honor, I think that demonstrates that any adjudication on the applicability or the, sorry, enforceability constitutionality of the 2024 subpoena would not necessarily control the outcome of the pending order to show cause proceeding, because facts have changed. And, you know, it could have an impact, but it will not control the outcome of that proceeding, which I think also means, you know, the 2024 subpoena is not, the challenge to the 2024 subpoena is not subject to younger for that reason. Do you want us to hold this for first choice? Your Honor, I think if I were you, I would probably do that. And that's, I think that would be the correct thing to do under the circumstances, given the possibility that first choice weighs on the rightness of a challenge to a pre-enforcement subpoena issued by a state agency. I don't think it's necessarily going to be determinative, but I think that it could have a significant impact on the reasoning here. And a lot of the same issues that we have, that we've raised on the rightness point are briefed there. Your Honor's, well, I'm low on time here. But you do have some time in rebuttal. Yes. Thank you. Thank you. And we'll hear from Mr. Pratt now. Good morning, Your Honors. May it please the Court. I'm Michael Pratt with Greenberg Charge, representing the Secretary of the Pennsylvania Department of Banking and Securities. Before I respond to some of these arguments, I just wanted to thought an update on where the state proceeding is right now might be helpful. We are, in our briefs, we did identify, I think both sets of briefs, that the merits hearing, the administrative merits hearing has taken place and has concluded. As of Monday, this past Monday, all of the post-hearing briefing has been completed. So it's now pending, decisions pending before the hearing examiner. In addition, Title Max of South Carolina, as well as all the other seven affiliates, filed a motion to dismiss in the administrative proceedings, arguing that the state had no personal jurisdiction over any of them. That was denied by the hearing examiner. So it was heard. Now, there's some arguments about the commission final adjudication. I'll get to that. But where we are now is Title Max has appealed. Title Max of South Carolina and the others has appealed to the Commonwealth Court of Pennsylvania. And their argument is that the commission has denied their motion to dismiss. And that was wrong, and therefore the Commonwealth Court should overturn that decision. That has been argued, and it is now pending before the Commonwealth Court. So those are the facts. And then, you know, we've been involved in this litigation. And then how do all those facts that you just told us impact what we're doing? Because, Your Honor, there has been a lot of argument that they have not had an adequate opportunity to have their constitutional claims heard. Number one is a factual matter they have. But secondly, they're also arguing that somehow younger stands for the proposition that it is not adequate unless their constitutional or their personal jurisdiction questions are finally, whatever that means, resolved before a merits hearing. There is no younger standard. I'm not. I've scoured the universe for a case that says that's the standard. What the standard is is that they have the opportunity to raise those constitutional claims in the state proceeding, including on judicial review. That's why it's relevant, because they've done that. But younger doesn't stand for that proposition anyway. And, you know, we've heard throughout these six cases these words used, extraterritoriality, regulatory overreach, targeted. The issue before has nothing to do with those points. The issue here is pretty simple. The dispositive issue is pretty simple. And that is, under our system of federalism, which forum is the right forum to hear the plaintiff's dispute? That's what the younger, that's all younger stands for, and that's the way the district court has applied it, and every other district court and court of appeals has applied it and found that the correct forum is the district, is Pennsylvania, because they filed it first and it's an ongoing proceeding. So there are really only two, as far as younger is concerned. By the way, before I even get to that, let me get, if I could go to the preclusion issue, because there's been some discussion about that. And I will go to this question about adequate virtual representation. The fact is, Your Honor, the law that they're relying on, the Fourth Circuit case they're relying on, is not good law anymore. Well, can I ask you about, because part of the preclusion ruling troubled me some. The district court seemed to rely on the fact that the lawsuits seemed coordinated, same counsel, same timing, and that all of these are Title Max affiliates somehow. And so therefore, because a Title Max affiliate in Texas had brought a lawsuit raising these same claims and had lost, that therefore Title Max of South Carolina was precluded and bound by, was bound by that judgment and precluded from bringing those claims itself in its own lawsuit. And I'm having trouble squaring that with the pretty high standard the Supreme Court has set for binding a non-party under issue preclusion. Well, Your Honor, that virtual representation high standard that they're referring to is no longer good law. There is a high standard. Taylor v. Sturgill is good law, right? Absolutely. Okay. Taylor v. Sturgill is the law. And, in fact, Taylor v. Sturgill was cited in the Fourth Circuit in a couple of other more recent cases. They don't cite the Madison cases. Well, how does that, how does this case satisfy that standard? It satisfies it because what Sturgill said is there are six different categories by which a non-party can be bound by a prior case. One of those categories is that a non-party preclusion may be justified on, based on preexisting substantive legal relationships. That's all the district court was saying. Now, they didn't use that language, but the fact is there is no dispute that there is a wide-ranging substantive legal relationship between all of these parties. They are owned by the same person. They have coordinated this. I thought the court in that case rejected a sort of loose, vague definition of what it means to be related enough. I mean, they said control. If one entity controls the other or controlled the litigation, or maybe if the court in the case that's being used to preclude, if that court recognized that this third party was implicated and made sure that their rights were protected, all of these set a very high bar for making sure that the third party's interests are protected, not just, well, they're all kind of subsidiaries of the same parent and so close enough. With all due respect, we may read the case differently. I was just, like, quoting the words of it. When I read Sturgill, Taylor v. Sturgill, as I read Taylor v. Sturgill, these were all separate and independent basis upon which, you're right, but that's a separate ground. One ground is whether there's a substantial legal relationship. That's one ground as whether a non-party is bound. Secondly, there is another ground if they have been adequately represented by another. There's another ground. Did the other party control the litigation? So you're saying a substantial legal relationship is that they're both subsidiaries of the same parent? No, Your Honor. It is a factual determination, but it's a substantial legal relationship is there's a close relationship between all of these parties. Every court ñ What is the relationship and what is the case finding that that is sufficient? Well, first of all, Your Honor, every court has looked at this, has determined that, because they are the same ñ they have the same address, place of business address. They have the same ñ they're owned by the same person. They have coordinated this litigation. There's no question about that. They have ñ well, there are a whole host of facts. But they are ñ they've won the parent company. They've won parent company. In fact, we don't even know all the ways that they're integrated. But they're clearly owned by the same person. That may be the problem, because in the district court's ruling, I didn't see findings that would establish this sort of close ñ close is not even the word, right? This sort of legal relationship where we can assume that one party's interests were protected when a different party was litigating. It's not enough to say, well, they use the same post office box and have the same parent. And that seems to be what you're saying. Yeah. Well, what I'm saying is, Your Honor, there are a whole host of facts, facts, facts. Yes, one is that they are ñ they do the same business. They're connected to the same ñ they're connected to the same parent company. They are owned by the same person. They are used ñ their own law firm, the same law firm. But I'll even go back further if we could, Your Honor, to show this. Even back in 2017, when this ñ when this subpoena was issued, there was a ñ they responded together to that subpoena. One entity responded to that subpoena on behalf of all of them, including this one. Well, wasn't it sent to only one place and it just, like, listed a bunch of entities and non-entities on the subpoena? So true, Your Honor. But if they were separate and independent, they could have done that. There was a central ñ I mean, the law sets a pretty high bar for us to find that separate entities are, in fact, the same entity. Your Honor, well, first of all, again, I agree that there's a high bar. But I think that ñ I don't know how else to explain that there are ñ and with the distant court file, there are no ñ there's no relationship that ñ the scenario we have here shows that these entities are sufficiently related. Well, Your Honor, there are a series of cases we've cited in our brief. Which do you like the best? Oh, gosh. Which do I like the best? Give me one that you think strongly supports. And I think that's what Judge Rushing has been trying to get at as well. What a ñ well, you have been getting at it, Judge Rushing. I'm just trying to get a response. Gosh, Your Honor. If I could, and my apologies. The only reason I have it is because there have been a number of them that were cited in our briefs. I honestly ñ the substantial legal relationship, the affiliate relationship, they have admitted that there's ñ Is there a Supreme Court case that you rely on? No, there isn't. Okay. Is there a ñ I mean, let's narrow it down here. Is there a Fourth Circuit case that ñ There is not a Fourth Circuit case we're relying on.  Is there a Third Circuit case that you're relying on since this is Pennsylvania? We're relying on ñ we're relying on Third Circuit cases. We're relying on Fifth Circuit cases. Okay. Which Third Circuit case? We're relying on Third Circuit cases. I'd have to pull them up, Your Honor. Oh, okay. Okay. I have no problem doing that. But I can rest on our briefs that there are a series of cases that we have cited for the proposition that there's a substantive legal relationship between all of these parties. That's what it means. There has never been a dispute about that. No, my question ñ By anyone, even by them. Counsel. I'm sorry. Go ahead, Your Honor. My question, and I think Judge Thacker's question, is about is there a case saying that this sort of relationship suffices for issue preclusion?  There have ñ for privity purposes, yes. For establishing privity, there are a series of cases that cite that. But, Your Honor, even if ñ and I know we're spending a lot of time on issue preclusion. But even if we ñ even aside from issue preclusion, because I don't want to miss all my time. Just independently, this court ñ the district court also ruled that it just simply doesn't satisfy the Younger standard here. That, number one ñ and there are only two serious points that they raise. One is that somehow there's no stated ñ that there's no sufficient state interest under middle sex. And the second, which we talked about somewhat, was that there has been no adequate opportunity to raise their constitutional issues in the state court. The fact is, Your Honor, that they're relying on the case Harper for a certain case. All Harper did ñ Harper was a very unique case. Unique case in that Harper was ñ dealt with a statute which, on its face, discriminated against out-of-state waste haulers. That is not what's going on here. And, in fact, Your Honor, that was 2005. I mean, the statute may not have discriminated on its face. But we had a prior Fourth Circuit decision saying that that statute or a statute very similar was a dormant commerce clause violation. Absolutely. But that's not what's going on here. We're not talking about a statute that is unconstitutional. That's not the issue here. The issue here is that they don't want any ñ the Pennsylvania Department of Banking said, ìWe are regulating whether these companies have come into Pennsylvania, have reached into Pennsylvania, and violate our usury statute.î It's not a facial challenge. It's a factual challenge. That is what is different. The second point I will make is this, Your Honor, because just a few years ago, the Supreme Court, this overriding ñ Younger stands for the proposition that all you need to establish is that there's an important state interest. And there is an important state interest. The Third Circuit has established that. Other courts in regulating and their police power in this field. And I was in ñ and I'll point this case out to you. In national court producers, U.S. Supreme Court case 20 ñ in 2023, they rejected this idea that somehow, that the courts, that there is a per se rule where just claiming commerce clause somehow overrides a state's police powers. In fact, I'll even read a sentence here. It says, ìThis court has never before claimed so much ground for judicial supremacy under the banner of the Dormant Commerce Clause.î What do we do about Harper? You know, it's the one difference between this case and the ones in Pennsylvania and Texas. And, right, there's pork producers and other cases on the merits of the Dormant Commerce Clause challenge. But does Harper ask us ñ I mean, are we supposed to look at the merits? Kind of take a peek and see whether this seems like a legit commerce clause claim? Or is the fact of pleading a commerce clause challenge enough? Or how do we ñ what's your suggestion for how Harper applies in other commerce clause cases? Well, Your Honor, first of all, I think the Supreme Court has made it clear that the commerce clause, this pleading a commerce clause claim is not enough. We are talking about a different standard, and that is what is sufficient for younger abstention. But Harper is a unique case. Right. It's unique 2005. I guess my question is ñ That is not ñ we're not talking about a fascist case. I'm trying to ñ go ahead. Thank you. I'm sorry. Go ahead, Your Honor. I'm trying to figure out. So Harper says that the plaintiffs there had pled a commerce clause challenge. And Harper said under Middlesex Factor 2, this is such a unique federal interest, this dormant commerce clause issue is such a uniquely federal interest that it diminishes the state interest and therefore abstention is not appropriate. And I'm trying to figure out how do we apply Harper to other cases raising dormant commerce clause challenges. Is your reading of Harper that we just look at what has been pled? Do we take a peek at the merits? Does it ñ I mean, what's ñ how do we ñ how do we handle that? I think Harper is very narrow. Harper says it. It's because on its face, on its face, this is a statute that discriminates against out-of-state workers. On its face. So it wasn't what they pled, it was the statute itself. It's a legal matter. We're looking at the statute. There's no factual determination. There is a legal determination based on what was pled. That's what makes it unique. And there's no other case out there that even stands for this proposition. Remember, this was 2005. It was before the Sprint decision was even issued. And so today, under this standard, it simply doesn't apply here because these are different types of cases. Yes, so I would contend that, yes, if there is a statute which, on its face, that the court could look at and determine that it is discriminating against out-of-state workers and impedes interstate commerce, that's the difference. And that's the only difference. Otherwise, the only fact that the court should look at in terms of extension is whether there is a strong state interest in the matter. And there is a strong state interest. Nobody's arguing that. What's being argued here is, for the first time, that somehow just pleading a commerce clause claim somehow overrides the state interest. The U.S. Court has made it clear that is not enough. So I hope I've answered your question. I appreciate it.  And so that's one. The second is whether there's an adequate opportunity. I have already said I've read that there's no case that says that there needs to be a decision in a state court. Now, federal court's a different issue. That a state's procedures have to decide an issue on the merits, a personal jurisdiction question before you reach the merits. But here, the fact is it was raised. It was heard. It was they tried to send it to the commission. They have taken the position that is the final decision in their appeal to the Commerce Court. So as a factual matter, as a factual matter, Younger simply, simply, the district court was right in abstaining alternatively. Preclusion, Your Honor, I won't go down that road again. The only other points I'll make real quick, Your Honor, is that the 2020, the 2024 subpoena, it wasn't right. It's not right. It's not right. It was not. It is. It's very different from those other set of cases that involve First Amendment restraint on speech, including the U.S. Supreme Court case that is pending. Can I ask you a question about the subpoena? I realize you're out of your time, but the subpoena says it has a warning about if you don't comply, you may subject you to penalties as provided by law. Are there penalties for not complying with the 2024 subpoena? No, Your Honor. So that's a prediction of like future proceedings and future penalties. All this is speculative, Your Honor. They may or may not enforce it. There is no threat of enforcement. Well, I'm just asking because if a subpoena comes with penalties, then it doesn't qualify as non-self-executing, and we have a different question. No, it does not come with penalties until they seek to enforce it. In fact, that's what happened in 2017. Do you have any other questions? We litigated for years. Do you have any questions? All right. Thank you. Thank you, Your Honor. Your Honors, I have a number of things to cover here. Let me just start out by saying that I do disagree with some of the facts that Mr. Pratt just recited, and I think actually the factual differences that we have actually demonstrate why the district court should have developed a more complete record before applying issue preclusion in this case. The district court simply did not have enough facts in front of it to conclude that issue preclusion applies. Second, I'd just like to bring the Court's attention to Dewberry, which is consistent with the fundamental principle that, you know, corporate entities are to be treated separately if they're incorporated separately. Dewberry says, if corporate law treated all affiliated companies as a single corporate entity, there could be reason to construe the term defendant in the same vein. But the usual rule is the opposite. It is long settled as a matter of American corporate law that separately incorporated organizations are separate legal units with distinct legal rights and obligations. In order to find otherwise, there has to either be veil-piercing or a finding of privity based on a more complete record than the district court had before in this case. Third, Your Honors, I'd like to address the subpoena. As Judge Rushing pointed out, the subpoena does come with an official seal from the Commonwealth of Pennsylvania. And it looks really serious. And it says investigative subpoena at the top. And it says, if you don't comply with this, there could be penalties under law. And it says that the Department of Banking Securities has the power to enforce these laws and to require people to produce documents. And that was sent to an entity six states away, 500 miles away. You know, if these state regulators are sending out these subpoenas and it turns out there is actually no enforcement power behind them unless they're brought to court, you know, what kind of message does that send? The message it sends to people is, you know, think about less sophisticated parties who may receive a subpoena like this, right? They've received a subpoena that has an official seal on it from the government, okay? And then they're told they can't go challenge it in court. They can't go challenge it as a violation of their constitutional rights. You know, they're literally left in limbo, which is what Telco says not to let happen in the younger context. Now I'd like to move on to Harper. And there's a lot of interesting case law in that Harper decision. I think it's very well written. I think it's undergirded by structural constitutional concerns, right? Younger is motivated by comity and federalism. Those motivations are literally turned on their head when a party pleads a commerce clause claim, particularly a commerce clause claim that is as meritorious as the one that we have pleaded. We have Midwest Auto Loans on our side. We have Carolina Trucks on our side. We have Frosh on our side. Frosh and Carolina Trucks are Fourth Circuit cases. So if the court does want to take a peek at the merits, it will see we have a very meritorious claim. What do you think we do with Harper? Is that what we do? I mean, obviously just pleading commerce clause is not enough. If anything, your argument is a little bit more about due process personal jurisdiction than it is about discriminating against outsiders. I mean, the whole problem here is Pennsylvania is treating an outsider just like it treats insiders. But do we look at the merits? That seems to not be what Younger is about. But just pleading this constitutional provision also seems insufficient. So what do we do with Harper? Your Honor, I'll start by pointing out what the Secretary has already conceded in her answering brief, pages 50 to 51, page 55, that the purported merit or lack of merit of appellant's commerce clause claim is completely irrelevant to the abstention analysis. We're willing to endorse that view for purposes of this case. They've conceded it, that it does appear to be what Harper says. We've pled a commerce clause claim. I think you can stop there. But I will say if you don't want to. So you think it's sufficient just to plead the commerce clause claim and that puts you and that takes care of the Younger abstention? Yes, Your Honor. I think if you have a facial commerce clause claim, which is literally what Harper says, then under existing Fourth Circuit precedent, then that takes you into federal court. And there's good reason for that, right, because a federal court is the proper form to adjudicate what is essentially a dispute between sister states, sister sovereigns in our union. And that is exactly what the framers intended, as Harper points out. The Constitution entrusts the federal courts with oversight over commerce clause disputes. So in Judge Wilkinson's opinion, he relies and discusses Medellin. Why would he discuss that? I'm sorry? I think it's pronounced Medellin. In Harper, Judge Wilkinson discusses, relies on Medellin. Why would he talk so much about that if it's just what you're saying here today is that you just pleaded and then you're in federal court? Your Honor, I think it's partially because the abstention analysis necessarily requires a look at the pleading that's in front of you. It's at the 12B6 stage, right? I mean, if the court wants to investigate the merits of a commerce clause claim, that necessarily requires additional briefing, which I think is proper here on remand to go back and brief this meritorious commerce clause claim. Again, in this particular case, there's no question. Is the whole spirit of the younger abstention? If we have to go in and look at the merits of the commerce clause? That's exactly right, and that's why I don't believe you have to do that to determine whether younger applies. But in this particular case, I think that we are entitled to litigate the merits of the commerce clause claim because younger should not apply consistent with Harper. Do you have any other questions? All right, you're out of time. Would you like to wrap up in 30 seconds? Yes, Your Honors. I'd just like to conclude by noting that we do have a bad faith exception claim, and I think that's an important part of our claim here, particularly when it comes to adequate opportunity. The court should reverse and remand the district court's opinion because collateral estoppel did not apply and the court improperly abstained under the younger doctrine. All right, thank you. We'll come down and greet counsel, and then we're going to take a brief recess before we finish our final two cases.
judges: Stephanie D. Thacker, Allison J. Rushing, DeAndrea Gist Benjamin